## Illinois Central Railroad Company v. Heimerdinger.

(Decided March 1, 1927.)

### Appeal from Jefferson Circuit Court (Common Pleas, Third Division).

1. Carriers—$896.75 Held Not Excessive for Damage to Carload of Tomatoes and Beans Arriving at Destination in Wilted and Damaged Condition.—$896.75 held not excessive for damage in transit to carload of fresh tomatoes and green beans, where plaintiff proved that, on arriving at destination, tomatoes were blistered and specked and beans molded and wilted, precluding sale of part and requiring sale of part at reduced price, and damages awarded were difference betwen price obtained on open market and that at which shipment would have been sold if properly transported.

2. Carriers—In Action Against Railroad, for Damage in Transit to Carload of Tomatoes and Beans, Evidence Showing Improper Icing Held for Jury.—In action against railroad for damage in transit to carload of fresh tomatoes and green beans, evidence showing that car was not properly iced held for jury.

3. Evidence—Credibility of Witnesses is for Jury.—Jury has right to determine credibility of witnesses, and to accept testmony which it believes true, and reject that which it believes untrue.

4. Limitation of Actions—Amendment After Expiration of Statutory Period to Bring Suit Against Carrier for Damages to Shipment to State Larger and Correct Amount of Damages, Held Not Barred (Interstate Commerce Act, Section 20, as Amended by Transportation Act 1920, Section 438 [U. S. Comp. Stats., Section 8604a].—Where shipper filed claim and brought suit for damage to carload of tomatoes and beans within time stipulated in bill of lading and Interstate Commerce Act, section 20, as amended by Transportation Act 1920, section 438 (U. S. Comp. Stats., section 8604a), but original pleading did not show full amount of claim, amendment to state larger, correct sum, after period for filing claim and bringing suit has expired, held not barred.

5.   Appeal and Error—In Action for Damage to Shipment from Missis-
     sippi, Argument as to Difficulty Mississippi Shippers Had in Se-
     curing Refrigerator Cars with False Floors Held Not Prejudicial to
     Defendant.—In action against railroad for damage in transit to
     tomatoes and green beans shipped from Mississippi, argument as
     to difficulty which Mississippi shippers had in securing refrig-
     erator cars with false floors which admitted circulation of cold air
     underneath load held not prejudicial to defendant's rights, though
     plaintiff had been furnished with car with plain floor.

   TRABUE, DOOLAN, HELM & HELM and R. V. FLETCHER for
appellant.

   THOMAS C. MAPOTHER for appellee.

   Opinion of the Court by Judge Sampson—Affirming.

   Complaining that a car loaded with fresh tomatoes
and green beans shipped from Hazelhurst, Mississippi,
to Louisville, Kentucky, on June 3, 1925, was damaged
and the vegetables wilted and spoiled in transit because
the car was not properly iced, this suit was instituted by
appellee, Heimerdinger, against the Illinois Central Rail-
road Company for $624.75 damages. An amended peti-
tion increased the sum claimed to $896.75, and upon trial
a verdict was returned for the latter amount, upon which
judgment was entered and this appeal is prosecuted from
that judgment. In the petition it was averred that the
vegetables embraced in this shipment were in good
physical, merchantable shipping condition at the time
loaded into the car at Hazelhurst, Mississippi, and the
bill of lading issued to appellee, but that on the 6th of
June, when the vegetables were delivered by the carrier
to appellee, in Louisville, they were unsound, decayed,
rotten, bruised, injured and damaged and were not in
merchantable condition, and that the difference between
the fair reasonable market value of the vegetables em-
braced in the shipment when delivered by the railroad
company to appellee at Louisville, in their then condition,
and the fair and reasonable market value at the same time
and place in good merchantable condition, was $896.75.
The answer contains a traverse of all the averments con-
cerning the good condition in which the vegetables were
received at Hazelhurst, and the damaged condition in
which they were when delivered in Louisville; and also
a plea that the injury, if any, to the shipment mentioned
in the petition was due to the inherent nature of the
vegetables, or to the method in which the shipment was

packed by the consignor, to the condition in which the vegetables were at the time the shipment was made, and these things were pleaded in bar of appellee's right of recovery.

Appellant railroad company very earnestly insists that the judgment should be reversed (1), because excessive damages were awarded; and (2) the court erred in overruling a motion for peremptory instruction in its favor; and (3) the court erroneously struck the amended pleading of appellant, and (4) counsel for appellee indulged in improper argument. We have examined the record carefully upon each of these points and find no merit in either of them. Appellee proved the nature and condition of the vegetables at the point of shipment, and further proved that when they arrived in Louisville, and the car opened, they were found to be in a wilted and damaged condition, tomatoes blistered and specked and beans molded and wilted so that a large part of them could not go on the market and a large part of the balance could be sold only at a reduced price, and that the difference between the price obtained upon the open market and that at which they would have sold had they been properly transported and delivered, was actually $896.75, the amount claimed in the petition and awarded in the verdict and judgment. The railroad company, however, claims the evidence for appellee does not show that all the vegetables were carefully inspected to learn of their condition before they were loaded in the car at Hazelhurst, in Mississippi, but that only a limited number of crates of tomatoes and hampers of beans were examined in each truck load or wagon load delivered to the car, and from such scant examination appellees and his consignors assumed that the balance of the vegetables were in fair condition, whereas the evidence did not show that to be true, and from this the railroad company argues that the vegetables which were not inspected before loaded into the car were over ripe or otherwise inherently defective, and that this was the cause of their damaged condition when they were received in Louisville, and not the failure of the railroad company to ice the car. It proved by its witnesses that the car was thoroughly iced before it set in for receiving the vegetables at Hazelhurst, and was again iced before it left that point and was iced at different points between the point of shipment and point of destination, and that there was plenty of ice placed in the car to have kept the temperature at the right point to preserve

the vegetables, hence it says that the damaged condition of the vegetables, if they were damaged, when they arrived in Louisville, was due to some other cause than want of proper refrigeration. This, however, is answered by appellee when he established the fact that the car when opened at Louisville, in the early morning of June 6th, was warm and was not properly refrigerated, and that the vegetables were spoiled, molded, blistered and specked. While the car may have been iced on the first part of its journey it was certainly not iced sufficiently to protect the green vegetables against deterioration when they arrived at Louisville, if the evidence introduced by appellee can be relied upon. This evidence was all before the jury and the jury had a right to determine the credibility of the witnesses and to accept that which it believed true and reject that which it believed untrue, and in exercising this prerogative it concluded that the car was not properly iced when it arrived at Louisville, and that the failure to ice the car was the cause of the deterioration in value of the vegetables. Under such facts it would have been improper for the trial court to have directed the jury to find and return a verdict for the railroad company as it was moved to do by counsel.

Appellant's complaint of the court's action in striking its amended plea goes only to the difference between the amount sought in the original petition, $625.75, and that claimed in the amended petition, which is $896.75, a difference of $272.00. Appellant railroad company by amended answer pleaded that section 20k of the Interstate Commerce Act, as amended by the Transportation Act of 1920, includes a provision reading:

"Provided further, that it shall be unlawful for any such common carrier to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of claim than ninety days, for the filing of claims than four months, and for the institution of suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice."

And also pleaded the terms of the bill of lading:

"Claims for loss, damage, or injury to property must be made in writing to the originating or de-

livering carrier or carriers issuing this bill of lading within six months after delivery of the property (or, in case of export traffic, within nine months after delivery, at port of export), or, in case of failure to make delivery then within six months (or nine months in case of export traffic) after a reasonable time for delivery has elapsed, provided that if such loss, damage, or injury was due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, then no notice of claim nor filing of claim shall be required as a condition precedent to recovery.''

Upon these facts it based its plea, also in amendment, that inasmuch as it is necessary for appellee to file his claim for loss and damage on account of the shipment within the time fixed in the bill of lading, and to institute his action within two years, and failed to do so, as to the difference between the amount claimed in the original petition and that set up in the amendment, $272.00, this amount was barred and the court was in error in striking this plea asserting these facts. This position, however, is untenable. It is admitted that the original petition was filed in time; that the claim was properly filed within the time fixed by the bill of lading, but as the amendment was not filed until after the time fixed had expired, it is insisted that no suit was, in fact, filed for the $272.00 which is in excess of the amount claimed in the original petition. The claim as well as the suit was for damages upon a single shipment of green vegetables and constituted but a single integral claim. Appellee could not have divided his cause of action and sued for part and maintained a separate action later for the balance. He was obliged to sue for the whole amount in a single action. In making his calculations he first arrived at the sum of $625.75, but when the matter was properly calculated it was found to be $896.75. It is not different from any other action for damages in that the petition may be amended and a larger sum claimed even after the statute of limitation has run as to the original assertion of the claim and the filing of the action. The rule is well settled that if an original petition is filed within the time fixed by law, but does not show the full amount of the claim, it may be amended at a later period, even after the statute has run, so as to set up the full claim based upon the facts set forth in the original petition. In the case of B. & O.

Ry. Co. v. Smith, 169 Ky. 593, it was insisted by the railway company that the cause, in so far as it was attempted to be prosecuted under the federal act, was barred because not commenced in time, but this court, after reviewing the authorities, said:

> "On the authority of these cases we think it is clear that, when the cause of action arises under the federal statute but suit is brought under the state law, or by some person not authorized to maintain an action under the federal statute, defects in the original petition may be cured by an amendment that does not set up a new and distinct cause of action, filed after the expiration of two years from the accrual of the cause of action, as the amendment will relate back to the filing of the original petition."

A more recent case upon the subject is that of Middlesboro H. T. Company v. L. & N. R. Co., 214 Ky. 823. In that case the railroad company had paid the judgment in a damage suit in which the Middlesboro Telephone Company was a joint tort feasor and sought recovery over against the telephone company. In its original action it sought to recover the amount it had paid out on the judgment, including cost, but did not mention attorney fees. The matter was delayed for some time and after the running of the statute it filed an amendment seeking to recover $350.00 as attorney fees along with the amount sought in the original petition. The telephone company made the same point against the railroad company in that case that is presented by the railroad company here, towit: that the amendment presented a claim that was barred by the statutes, but we held that it was all one cause of action and that the railroad company was entitled to recover attorney fees along with the other sums paid out on their joint account, saying: "The amendment filed was but a perfecting of the cause of action on the tort which the original petition imperfectly stated, in that it did not allege this particular element of damages flowing therefrom." Moreover, the statute does not require the amount of the claim to be stated, but only that the carrier shall not provide a shorter period "for giving notice of claim, for filing of claims, and for the institution of suits," than the periods fixed, but it nowhere says that the amount of the claim shall be set forth in the notice of the claim. Certainly where one files a claim for $625.00

for damages for a certain shipment of goods and presents the bill of lading, the carrier cannot be heard to complain if after looking into the matter the consignor or shipper discovers that his damages are greater than the amount first claimed, because the actual damage existed all the time and the amount asserted at first was error, the correction of which did not constitute a new or different claim. The plea, therefore, of appellant railroad company in bar of the $272.00, the excess over the original claim, did not state a cause of defense even *pro tanto*, and the trial court did not err in striking it.

Lastly, appellant contends that counsel for appellee indulged in improper argument before the jury, in that he asserted that the railroad company had a refrigerator which had plain floors, and other cars which had false floors, and that no one secured for his use cars with false floors which furnished better circulation of air than the other kind, except those persons particularly fortunate; that the cars with false floors were considered by defendant as too good for Mississippi shippers. Counsel for appellee says that he did not make the argument which counsel for appellant insists that he made, but instead only said:

"The witness, C. W. Brown, who was a Moorehead inspector, noted two things on his inspection report, the first of which was that the temperature inside the car at the time ranged from 47 to 50 degrees, and the other that the car had a plain floor, which did not admit circulation of cold air from underneath the load; that it did not have a false floor permitting such circulation of cold air. And the witness, Carney, connected with the Perishable Freight Service Department of the defendant, explained that while false floors in cars of this sort supply better refrigeration, a Mississippi shipper is fortunate to get one so equipped; though defendant had them with permanent false floors in sufficient abundance to and did supply them generally to those only who asked for them."

The trial court made no ruling upon the matter but embraced the affidavit of counsel in the bill of exceptions along with the motion and grounds for new trial, which was overruled. Manifestly the trial judge did not consider the argument actually made in his presence as

prejudicial to the rights of appellant, and in substance so ruled in overruling the motion and grounds for new trial. We are not authorized to make a different finding upon the record, the evidence considered. We must, therefore, hold with the trial court that this ground for new trial was not well taken. Upon the whole we think appellant had a fair and impartial trial.

Judgment affirmed.